**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Don L. HART, Defendant-Appellant.**

**No. 82–1637.**

United States Court of Appeals,
Tenth Circuit.

March 5, 1984.

Rehearing Denied June 7, 1984.

Peter R. Bornstein of Berenbaum & Berenbaum, Denver, Colo., for defendant-appellant.

Richard N.W. Lambert, Asst. U.S. Atty., Salt Lake City, Utah (Brent D. Ward, U.S. Atty., Salt Lake City, Utah, was also on brief), for plaintiff-appellee.

Before HOLLOWAY and McKAY, Circuit Judges, and BROWN, District Judge.*

---

* The Honorable Wesley E. Brown of the United States District Court for the District of Kansas, sitting by designation.

HOLLOWAY, Circuit Judge.

A jury found the defendant, Don L. Hart, guilty on eleven counts charging interstate transportation of firearms by a convicted felon,[1] 18 U.S.C. § 922(g), and two counts charging unlawful possession of a .45 caliber machine gun.[2] 26 U.S.C. § 5861(d), (h).[3] The firearms were found in the warrantless search of defendant's motorhome. On a trip from Idaho to Utah, the defendant was stopped because the police had reports that he was holding a woman against her will. This proved not to be true, but in a search following this stop the firearms were found. This stop was the subject of an earlier appeal in which we reversed the trial court's decision to suppress the firearms.[4]

After the police found the weapons, the defendant was arrested and advised of his *Miranda* rights. II R. 202–03. The next day he was questioned by Officer Fox and Agent McClintock. At this time the defendant Hart explained that he had taken the machine gun as collateral for a $3,000.00 loan. II R. 238, 247. The defendant also admitted that while in Idaho he and Mr. Hege had loaded his motorhome with a number of weapons. *Id.* at 248. Moreover, defendant admitted that he was aware that it was illegal for him to possess firearms without a certificate of release, and although he had applied for one, he had not been granted such release. *Id.* at 248–49.

For reversal defendant contends that: (1) his confession was admitted in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964); (2) the trial court failed to adequately admonish the jury not to discuss the case and to avoid media reports about the case; (3) the absence of a transcript of the voir dire of the jury from the record on appeal prejudiced him; (4) the trial court made various erroneous evidentiary rulings; (5) the firearms should have been suppressed; and (6) because the confession was improperly admitted, there was insufficient evidence to sustain the convictions.[5] We disagree and affirm.

1. The United States introduced evidence that the defendant was previously convicted of fraudulent preparation of income tax returns—an offense punishable by imprisonment for more than one year.

2. With respect to the machine gun the defendant was charged with having committed two crimes, possession of an unregistered machine gun and possession of a machine gun with an obliterated serial number. I R. 6.

3. The defendant was sentenced to imprisonment for five years each on counts 1 through 11, to run concurrently. *See* 18 U.S.C. § 924(a) (penalty of fine not more than $5,000.00, or imprisonment not more than five years or both). On each of the remaining two counts, defendant was sentenced to eight years' imprisonment to run concurrently. *See* 26 U.S.C. § 5871 (penalty of fine not more than $10,000.00 or imprisonment not more than ten years or both). The eight year sentences on counts 12 and 13 were to run concurrently with the five year sentences on counts 1 through 11.

4. *See United States v. Hart*, 656 F.2d 595 (10th Cir.1981). The district court had granted defendant's motion to suppress the firearms, reasoning that "when prior knowledge of criminal activity is possessed by officers several days in advance ... authority to make an investigatory stop is not present,'" id. at 597 n. 2 (quoting district court written opinion); that the investigatory stop was pretextual; and that there had been ample time to obtain a search warrant. The trial court held that the unlawful stop then tainted the fruits of the search.

We held that the police did not need full probable cause "to make an investigatory stop of a vehicle. Such a stop is lawful if the officer has 'some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity.'" *Id.* at 598 (quoting *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 694, 66 L.Ed.2d 621 (1981)); *see also Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). After holding the stop valid, we reversed but did not go on to determine whether the subsequent search was consented to, since the trial judge had not ruled on consent.

5. Defendant also appears to argue that there was insufficient evidence to prove that the firearms seized in the search of the motorhome travelled through interstate commerce. Appellant's Opening Brief at 3–5; Appellant's Reply Brief at 3–5. However in his opening statement to the jury, defendant's trial counsel conceded this point. Defendant's counsel stated:

The witnesses are going to satisfy you beyond any question of doubt that when the

## I.

Defendant challenges the admission of his inculpatory statement made to the police while he was in custody. He argues that the record establishes neither that he was advised of his *Miranda* rights, nor that he waived them. Moreover, defendant asserts that a *Jackson v. Denno* hearing should have been held to determine whether his confession was voluntary.

## A.

The record does not reveal the substance of the advice of rights read to defendant, just prior to his making inculpatory statements to ATF Agent McClintock and Detective Fox of the Utah County Sheriff's office. Nor does the record show any express waiver of his rights before defendant made his inculpatory statements. It shows only that Agent McClintock read to the defendant from a printed card, and that the defendant then agreed to talk with the officers. II R. 237–38. There is no indication of what the contents of this card were. Defendant argues that this is insufficient to show that his inculpatory remarks were not admitted in violation of· *Miranda.*

■ Defendant makes this argument for the first time on appeal. He neither made a suppression motion before trial, *see* Fed.

R.Crim.P. 12(b)(3), nor objected to the admission of the statement, *see* Fed.R.Evid. 103, nor moved to strike it during trial. No explanation or excuse has been offered for these omissions. In such circumstances where no objection on *Miranda* grounds was made to the use of the confession throughout the trial court proceedings, we hold that the objection was waived.

Rule 12(b)(3), Fed.R.Crim.P., provides that suppression motions must be made prior to trial, and Rule 12(f) provides that failure to make such a motion constitutes a waiver. This rule applies to confessions allegedly obtained through unconstitutional means. The advisory committee notes explain that Rule 12(b)(3)

> makes clear that objections to evidence on the ground that it was illegally obtained must be raised prior to trial. This is the current rule with regard to evidence obtained as a result of an illegal search.... It is also the practice with regard to other forms of illegality such as the use of unconstitutional means to obtain a confession.

Fed.R.Crim.P. 12(b)(3) advisory committee note to 1974 amendment (citations omitted); *see also* 1 C. Wright, *Federal Practice & Procedure* § 193, at 703–04 (1982).[6]

---

officers that Mr. Lambert has indicated to you stopped the motorhome and searched it the guns were present. And I believe that *you'll be satisfied* by the evidence that the witnesses are going to adduce *that the guns originally came from Idaho.* And *Mr. Hart does not controvert or deny either of those assertions about the interstate transportation counts of this indictment.* However, there is another element of the offense to which Mr. Lambert has alluded and that is that the guns must have been transported, number one, by Mr. Hart and not someone else. And, secondly, that he knew that the guns were being transported and that he was an essential participant in that act so as to bring him within the prohibitions of the statute.

II R. 8 (emphasis added).

At trial it was defendant's theory of the case that although the firearms were transported through interstate commerce, he did not possess them. *See* II R. 381–89 (closing argument of defendant's counsel) He conceded the point that the weapons, other than the machine gun, were brought from Idaho to Utah. Defendant admitted this in his confession to Agent McClin-

tock. II R. 250–51. He also admitted to McClintock he had received the machine gun several weeks before his arrest from a Bob Jones in Salt Lake City as collateral for a loan to Jones. II R. 247.

**6.** *See also United States v. McElroy,* 697 F.2d 459, 465 (2d Cir.1982) (at time of cross-examination of Government's witness, "it was too late properly to make a motion to suppress [statement allegedly inadmissible under *Miranda*]. *See* Fed.R.Crim.P. 12(b)(3)."); *United States v. Contreras,* 667 F.2d 976, 978 n. 2 (11th Cir.); (recognizing that failure to make suppression motion before trial ordinarily waives right to make *Miranda* challenge to statements, but permitting challenge where trial court entertained and ruled on suppression motion during trial), *cert. denied,* 459 U.S. 849, 103 S.Ct. 109, 74 L.Ed.2d 97 (1982); *United States v. Badwan,* 624 F.2d 1228, 1232 (4th Cir.1980), (holding that under rule 12(b)(3) and (f) failure to raise, *inter alia,* claim that statements were inadmissible under *Miranda* constituted a waiver), *cert. denied,* 449 U.S. 1124, 101 S.Ct. 941, 67 L.Ed.2d 110 (1981); *United States v. Popejoy,* 578 F.2d

### B.

Defendant also argues that the trial court should have held a *Jackson v. Denno,* hearing to determine whether defendant's confession was voluntary.[7] However, defendant's trial counsel never made a motion for such a hearing, and there was no contemporaneous objection made when the confession was introduced. Moreover, our review of the record reveals that there was no evidence introduced to raise an issue of voluntariness.

On appeal, defendant urges for the first time that a voluntariness hearing should have been held. To accept defendant's position, we would have to find that the trial court has an obligation *sua sponte* to hold a voluntariness hearing, even when the defense does not challenge the admission of the confession at trial by any means, and no facts before the trial court suggest that the confession might be involuntary. We cannot agree.

Recently in *United States v. Janoe,* 720 F.2d 1156, 1163–65 (10th Cir.1983), we held that the failure to hold a *Jackson v. Denno* hearing was not harmless error. However, the defendant there on the morning of trial orally moved to suppress his confession as involuntary, *inter alia,* because it was made while he was intoxicated; he objected during trial to testimony concerning the confession on the same ground; and he again objected when the Government offered the signed waiver of his *Miranda*

rights. Moreover during trial the testimony gave some indication of intoxication. *Janoe, supra,* 720 F.2d at 1164 n. 14. We rejected the Government's contention that it was harmless error to fail to hold the hearing, mandated by *Jackson v. Denno* and § 3501(a), on the voluntariness issue. The issue was clearly raised, and we remanded for such a hearing.

■■■ As noted, here the defendant did not make the voluntariness of his confession an issue by any motion or objection before or during trial, and the record reveals that no evidence presented raised this issue.[8] Trial courts need not hold a *Jackson v. Denno* hearing on their own motion unless there is an issue of voluntariness. *See United States v. Powe,* 591 F.2d 833, 842 (D.C.Cir.1978) ("unless the voluntariness question is brought to attention of the trial court, the trial judge generally is not required to raise the issue *sua sponte,* and a *Jackson v. Denno* hearing is not constitutionally mandated"); *United States v. Stevens,* 445 F.2d 304, 305 (6th Cir.) (per curiam), ("hearing is required only if the issue of voluntariness is raised") *cert. denied,* 404 U.S. 945, 92 S.Ct. 298, 30 L.Ed.2d 260 (1971); *Jacobson v. People of State of California,* 431 F.2d 1017, 1019 (9th Cir. 1970) ("Only where there is an objection to a confession on the grounds it is involuntary or where there is present in the record evidence tending to show such involuntariness, need there be held [a *Jackson v. Denno* hearing]"). Indeed, § 3501(a)

---

1346 (10th Cir.) (Defendant's failure to object at trial that her confession was product of unlawful arrest waived error), *cert. denied,* 439 U.S. 896, 99 S.Ct. 257, 58 L.Ed.2d 243 (1978).

**7.** 18 U.S.C. § 3501(a) codifies the rule from *Jackson v. Denno.* Section 3501(a) provides that:

> In any criminal prosecution brought by the United States or by the District of Columbia, a confession, ... shall be admissible in evidence if it is voluntarily given. *Before such confession is received in evidence, the trial judge shall, out of the presence of the jury, determine any issue as to voluntariness.* If the trial judge determines that the confession was voluntarily made it shall be admitted in evidence and the trial judge shall permit the jury to hear relevant evidence on the issue of vol-

untariness and shall instruct the jury to give such weight to the confession as the jury feels it deserves under all the circumstances. (Emphasis added).

**8.** Defendant argues that an issue of voluntariness was raised "as that concept appears in 18 U.S.C. 3501 ... precisely because there was a failure to adjudicate the issue of whether or not Don Hart waived his Fifth and Sixth Amendment rights." Appellant's Reply Brief at 7. We are not persuaded. Although the record does not demonstrate the substantive details of the advice of rights that the defendant was given immediately prior to questioning, it was testified that he was read "his rights from a printed rights statement." II R. 237. If a challenge had been properly made to the *Miranda* warning before or during trial, we would have a different case. But no such issue was raised.

speaks of the court's duty to hold a hearing to "determine any issue as to voluntariness." 18 U.S.C. § 3501(a).

Because there was no issue of voluntariness raised, the trial court had no duty to hold a *Jackson v. Denno* hearing and there was no error in not holding such a hearing or in the admission of the confession.

## II.

The defendant argues further that in violation of his due process rights he was denied a fair trial because (1) the trial court failed to adequately admonish the jury about discussions and communications concerning the case; and (2) the trial court made erroneous evidentiary rulings. We find neither contention persuasive.

### A.

Defendant argues that the jury was inadequately admonished not to discuss the case and to avoid media reports concerning the case. He says that when the jury members "were excused from court they were either told by the trial judge to 'remember what I previously told you,' or to not talk to anyone about the case." Appellant's Opening Brief at 8. It appears that the judge was referring to some remarks he made to the jurors after they were sworn and before a short recess,[9] although the record does not actually reveal what the judge said to the jury at that time. Defendant asserts that we should in any event require trial courts to give a more complete admonition than was given here.[10]

Our review of the record demonstrates that before the break for lunch on the first day of trial, the judge gave the jury no admonition other than to remember what he had previously told them. II R. 21. As noted, we have no record of a previous admonition on this subject. When court recessed for the day, however, the judge made a further statement. He said that "[i]t's important that you remember what I've previously told you. Don't talk to anybody about the case. Let's keep an open mind. Let's get the whole story. Thank you, and you may be excused." II R. 128. The following day, at each recess the judge told the jury to remember what he had previously told them. II R. 172, 214, 268, 277, 312. At the end of this day the parties had finished presenting the evidence, and the judge admonished the jury as follows:

> Okay. Ladies and gentlemen, I'm going to let you go home tonight and have you come back tomorrow. I'd like you to report at five minutes to 2:00 tomorrow and we'll get at this matter at 2:00. It is particularly important that you *remember what I've previously told you. Don't talk to anybody about this case. Stay away from any media report on the case if any there be. You've seen it. You've heard it with your eyes, your ears, that's what's important here* so we'll see you tomorrow at five minutes to 2:00. Thank you very much and you may be excused.

II R. 345. (emphasis added).

■ Throughout the record there is no objection that the court did not adequately

---

**9.** Our record does not include the proceedings on the selection of the jury, or any remarks by the judge to the jurors before an early recess. The record reveals only the following:
THE COURT: Is the plaintiff ready?
MR. LAMBERT: We are ready, your Honor.
THE COURT: Defendant ready?
MR. BARBER: Defendant is ready, your Honor.
(*Jury chosen, sworn, and short recess taken.*)
THE COURT: Why don't we go ahead, and the record will show that the jury is present, the defendant is present, counsel are present. Mr. Lambert, you may proceed.
II R. 2 (emphasis added).

**10.** Defendant asserts that pursuant to our supervisory power we should require trial courts to give an admonition similar to that suggested by Devitt and Blackmar. Appellant's Reply Brief at 9. *See* 1 E. Devitt & C. Blackmar, *Federal Jury Practice and Instructions* § 10.14, at 273–74 (3d ed. 1977). The trial judges are fully familiar with this type of instruction which is commonplace, and we agree that an admonition along this line should be given at some point before jurors disperse for recesses or for the day, with reminders about the admonition sufficient to keep the jurors alert to proper conduct on their part.

admonish the jurors, and there is no attempt to show prejudice in that respect. In rejecting claims that failure to admonish the jurors properly in this respect required reversal, we have found it important that the defendant failed to object at trial, *United States v. Carter*, 430 F.2d 1278, 1279–80 (10th Cir.1970), or that no prejudice resulted from the absence of an adequate admonition, *United States v. Coppola*, 526 F.2d 764, 775–76 (10th Cir.1975), or both. *United States v. Borum*, 464 F.2d 896, 901 (10th Cir.1972) (objection too late and prejudice will not be presumed); *see also Baldwin v. Blackburn*, 653 F.2d 942, 948 (5th Cir.1981), (claim of error due to failure to admonish some of the jurors must fail, absent allegation of prejudice) *cert. denied*, 456 U.S. 950, 102 S.Ct. 2021, 72 L.Ed.2d 475 (1982); *United States v. Arciniega*, 574 F.2d 931, 933 n. 4 (7th Cir.), (failure to admonish jury not error warranting reversal, absent some showing of prejudice) *cert. denied*, 437 U.S. 908, 98 S.Ct. 3101, 57 L.Ed.2d 1140 (1978).

Defendant relies on *United States v. Williams*, 635 F.2d 744 (8th Cir.1980), in which reversal was predicated on failure to give any such admonition, although there was neither an objection nor a showing of actual prejudice. In *Williams* no admonitions were given at any point in the trial, and the jury was permitted to separate overnight after deliberations had begun. The court held that the potential prejudice was so great that the defendant need not show actual prejudice to warrant a new trial. *Id.* at 746.[11]

Assuming, *arguendo*, that there may be instances when the likelihood of prejudice is so great that one need not object at trial or show specific prejudice, this is not such a case. Here the risk that defendant was prejudiced is negligible. Since there is no objection in our record that the jury was not properly admonished before the first recess, *see* note 9, *supra*, we will not presume that the judge failed to give an admonition then, particularly in view of his reference before the noon break the first day to what he had previously told the jurors. At the end of the first day, the judge told the jury not to discuss the case with anyone, and to keep an open mind. The next day at every recess the judge admonished the jury to remember what they had previously been told.[12] Moreover, at the end of this day when the parties had finished presenting their case to the jury, the judge gave a very complete admonition.

In such circumstances, we are satisfied that the complaint concerning the adequacy of the admonitions in no way calls for a new trial.

## B.

Defendant argues that three of the trial court's evidentiary rulings constitute reversible error. All three prevented defendant's trial counsel from obtaining responses to questions. The first two found the question to be irrelevant, and the third involved a witness' invocation of his Fifth Amendment privilege against self incrimination.

### (1)

The first ruling challenged occurred when defendant's trial counsel asked officer Colledge if he believed the defendant's account of where he found the key to the machine gun case. The Government objected to this question as irrelevant, and the trial court sustained the objection despite defendant's argument that the question went to credibility. II R. 230.

---

**11.** The Eighth Circuit recently found that *Williams* was not controlling in other circumstances. In *United States v. Weatherd*, 699 F.2d 959 (8th Cir.1983), it was held not reversible error to fail to admonish the jurors on one occasion when they were admonished on thirteen other occasions. The court believed that given such repeated admonitions, the jurors had been "adequately apprised of their duty not to discuss the case outside the jury room." *Id.* at 962.

**12.** We note that Devitt & Blackmar approve of the practice of referring to an admonition previously given, or repeating the admonition in full or in part at subsequent recesses. It is said to be good practice to repeat the admonition in full if there is to be a recess over a weekend or for several days. 1 E. Devitt & Blackmar, *supra*, § 10.14, at 274.

This ruling is said to be one of three occasions on which the trial judge erred by limiting the defendant's ability to attack the credibility of Government witnesses and to demonstrate their bias. Appellant's Opening Brief at 6. Apparently the defendant is saying that he should have been allowed to show bias by obtaining an admission from the witness that he did not believe the defendant's explanation about finding the key to the gun case.[13]

The second ruling of which defendant complains concerned a hair pin. There had been testimony by a Government witness, Debbi Robinson, that defendant had opened the machine gun case with a hair pin and showed her the machine gun. II R. 169. Defendant's counsel sought to have Agent McClintock bend a hair pin in a configuration that could pick a lock. The theory that the defendant was trying to develop is not explained and defendant only argues vaguely that the defense was trying to attack the credibility of the witness. We can only surmise that perhaps the defendant was trying to show it would be difficult to open the case with an improvised device. The court sustained the Government's objection that such a demonstration was irrelevant. Defendant also sought to have the hair pin itself admitted in evidence, but a further objection was sustained that the exhibit was irrelevant and that no foundation had been laid for its admission. II R. 250.

■ In reviewing a trial court's evidentiary rulings we must remember that "questions concerning the sufficiency of foundation evidence, the exhibit's relevancy, and the weighing of that relevancy, if any, against possible prejudice ... are [matters] within the sound discretion of the trial court, and we can reverse only for an abuse of discretion." *United States v. Harris,* 534 F.2d 207, 213 (10th Cir.1975) (per curiam opinion on rehearing), *cert. denied,* 429 U.S. 941, 97 S.Ct. 359, 50 L.Ed.2d 311 (1976). *See also United States v. Boothman,* 654 F.2d 700, 703 (10th Cir. 1981) ("axiomatic that the trial judge is vested with a large amount of discretion regarding the admission of evidence").

■ We cannot say that either of these rulings was an abuse of discretion. As to the first ruling, defendant's counsel did not persuasively explain either at trial or on appeal how a response to the question would go to credibility. Like the trial court, we also fail to see how Officer Colledge's opinion as to the defendant's veracity would be relevant to the officer's credibility. The facts about the incident of defendant's production of the key were developed and we cannot agree that there was any abuse of discretion in not allowing the defendant to show the officer's doubts about the defendant's veracity.

■ Similarly, the trial court did not abuse its discretion in making the second ruling on the basis of lack of relevance. Further, there was never any foundation laid that the hair pin was comparable to any device that had previously been used to open the case. Without this, it was plainly within the trial court's discretion to prevent this line of questioning. *See United States v. Golden,* 671 F.2d 369, 371 (10th Cir.) (trial court has discretion to determine if adequate foundation laid), *cert. denied,* 456 U.S. 919, 102 S.Ct. 1777, 72 L.Ed.2d 179 (1982). *United States v. Carranco,* 551 F.2d 1197, 1199–1200 (10th Cir.1977) (adequacy of foundation left to trial court's

13. The case containing the machine gun was found in the search of the motorhome along with the other weapons. The case was locked, and the defendant said it was not his and he did not know what was in it. The officers took it outside and endeavored to open it. The defendant went into the motorhome. When he exited, he explained that he had found a key on the floor, and perhaps it might open the case. The key did open the case. II R. 200–02.

Officer Colledge testified that, through a rear window of the motorhome, he observed the defendant put his hand into his pocket and remove something immediately before exiting the motorhome and providing the officers with the key. II R. 222–224. Defendant's attorney was attempting to demonstrate that Officer Colledge believed the defendant lied when he told the police that he found the key on the floor.

discretion and overturned only for clear abuse of discretion).

### (2)

In an attempt to show that the machine gun did not belong to the defendant, defendant called Robert Jones. Defendant argues that when asked about the machine gun and its case the court should not *sua sponte* have "stopped the witness from answering questions about the green attache case" on Fifth Amendment grounds. Appellant's Opening Brief at 6–7. Rather the witness should have been forced to invoke his Fifth Amendment privilege in front of the jury. Appellant's Reply Brief at 10–11. We are not persuaded.

 The witness was clearly entitled to invoke the Fifth Amendment privilege against self-incrimination. It is for the judge to decide in the first instance if a witness' silence is justified. He may order the witness "to answer *only if it is 'perfectly clear' that the witness is mistaken and the answers 'cannot possibly' tend to incriminate*. In making this determination the judge must liberally construe the privilege in favor of the right it was intended to secure." *United States v. Nunez*, 668 F.2d 1116, 1121 (10th Cir.1981) (emphasis added) (citations omitted) (quoting *Hoffman v. United States*, 341 U.S. 479, 486, 488, 71 S.Ct. 814, 818, 819, 95 L.Ed. 1118 (1951)). Under this standard, it is clear that the witness' silence was justified. Possession of the machine gun at issue is a crime. *See* 26 U.S.C. §§ 5861(d), (h). Hence, it cannot be said that admitting ownership of the weapon or having seen it before could not possibly tend to incriminate.

 To accept defendant's argument that the witness should have been required *to invoke the Fifth Amendment before the jury* would be contrary to precedent.[14] Defendant does not have a right to force a witness to invoke his Fifth Amendment privilege before the jury. " 'It is well settled that the jury is not entitled to draw any inferences from the decision of a witness to exercise his constitutional privilege whether those inferences be favorable to the prosecution or the defense.' " *United States v. Nunez, supra*, 668 F.2d at 1123 (quoting *Bowles v. United States*, 439 F.2d 536, 541 (D.C.Cir.1970) (en banc), *cert. denied*, 401 U.S. 995, 91 S.Ct. 1240, 28 L.Ed.2d 533 (1971)). Previously we have rejected a defendant's argument that the trial court improperly prevented him from forcing a witness to invoke the Fifth Amendment privilege in front of the jury. *United States v. Eitel*, No. 75–1537 (10th Cir. Jan. 30, 1976) (unpublished). We reasoned that the "trial court should exercise its sound discretion in determining whether a defendant should be allowed to place a witness on the stand when that witness has indicated he will assert the self-incrimination privilege as to essentially all questions." *Id.* at 8–9; *see also United States v. Crawford*, 707 F.2d 447, 449 (10th Cir. 1983); *United States v. Martin*, 526 F.2d 485, 487 (10th Cir.1975); *cf. United States v. Kerr*, 711 F.2d 149, 152 (10th Cir.1983) (not error to prevent defendant from calling witness who would do nothing but invoke Fifth Amendment as to all pertinent questions). Other circuits agree that a defendant has no right to call a witness to force him to invoke his Fifth Amendment privilege before the jury. *See, e.g., United States v. Harris*, 542 F.2d 1283, 1298 (7th Cir.1976) ("The defendants have no right to have the jury draw inferences from the witness' exercise of [the Fifth Amendment] right."); *United States v. Lacouture*, 495 F.2d 1237, 1240 (5th Cir.) (Neither side has the right to benefit from witness' invocation of privilege), *cert. denied*, 419 U.S. 1053, 95 S.Ct. 631, 42 L.Ed.2d 648 (1974); *United States v. Johnson*, 488 F.2d 1206, 1211 (1st Cir.1973) (Defendant has no right

---

**14.** We note also that the witness did actually invoke his privilege before the jury when asked if he owned the machine gun. II R. 297. The defendant's argument is that when the witness was earlier asked if he had seen the machine gun case, he said only "this is the point that I wish to invoke—." II R. 296. Before he could finish, the court told counsel to put his next question. *Id.*

to bring former co-defendant before jury solely to have him claim Fifth Amendment); *Bowles v. United States,* 439 F.2d 536, 541–42 (D.C.Cir.1970) (en banc) (defendant has no right to call witness to have him invoke Fifth Amendment), *cert. denied,* 401 U.S. 995, 91 S.Ct. 1240, 28 L.Ed.2d 533 (1971).

In sum, we find no error in any of the evidentiary rulings challenged by the defendant.

### III.

The defendant argues that the lack of a record on appeal of the jury selection process including the voir dire of the veniremen denies him full appellate review. Appellant's Opening Brief at 9. He further asserts that the trial judge ordered that " 'a complete transcript of the trial held in the above-entitled action' " be transmitted to the Tenth Circuit Clerk. Therefore the missing portions of the record should not be attributed to lack of diligence on defendant's part. Appellant's Reply Brief at 8. We disagree.

▬▬▬ It is the responsibility of the appellant to insure that all materials on which he seeks to rely are part of the record on appeal. *See* Fed.R.App.P. 10(b) & 11(a); 9 J. Moore, B. Ward & J. Lucas, *Moore's Federal Practice* §§ 210.03, 211.05 (1983). When an appellant asserts that his conviction should be reversed because of a particular error and the record does not permit the reviewing court to evaluate the claim, the court will generally refuse to consider it. *See United States v. Gerald,* 624 F.2d 1291, 1295–96 & n. 1 (5th Cir. 1980), (objection to voir dire of veniremen will not be considered where defendant has failed to have it included in the record), *cert. denied,* 450 U.S. 920, 101 S.Ct. 1369,

67 L.Ed.2d 348 (1981); *United States v. Brewer,* 630 F.2d 795, 803 (10th Cir.1980) (no occasion to determine merits of defendant's challenge to affidavit on which issuance of warrant based where affidavit not included in record); *United States v. Strand,* 617 F.2d 571, 578 (10th Cir.), (defendant's challenge to sufficiency of evidence will not be considered when defendant has failed to have record transmitted on appeal), *cert. denied,* 449 U.S. 841, 101 S.Ct. 120, 66 L.Ed.2d 48 (1980). *But cf. United States v. Hubbard,* 603 F.2d 137, 139–40 (10th Cir.1979) (Although defendant has failed to have entire record and transcript transmitted on appeal, court will nevertheless endeavor to dissect issue as presented in the briefs).

Since it was the defendant's responsibility to insure that the record is complete for his purposes, he cannot seek to take advantage of missing portions of the record. Here defendant admitted at oral argument that no motion to supplement the record had been made. We find no error on this point.

### IV.

Defendant argues that the Fourth Amendment dictates that the firearms found in the warrantless search of his motorhome be suppressed. Appellant's Opening Brief at 10. In an earlier appeal, *United States v. Hart,* 656 F.2d 595 (10th Cir. 1981), we reversed the trial court's ruling that the firearms should be suppressed as fruit of the poisonous tree following an illegal stop. We ruled that the stopping of defendant was permissible as an investigative stop, and left it for the trial court to determine if there was consent to the search. We decline to reconsider our earlier decision.[15]

---

**15.** Defendant argues that *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982) was decided after our suppression decision and that *Ross* makes clear that probable cause is essential for a valid warrantless search under the auto exception. This misses the point. In the earlier opinion we held that the initial investigatory stop of the motorhome was lawful. We left it for the trial court to decide if

the subsequent search of the vehicle was valid as a consent search, as the Government contended. *See Hart, supra,* 656 F.2d at 598. Probable cause is not needed for a valid consent search, which was found here after our reversal of the suppression order, and our remand. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 222 & n. 4, 93 S.Ct. 2041, 2045 & n. 4, 36 L.Ed.2d 854

Defendant now argues that after our remand the trial court did not find that there was consent to the search; hence the firearms should not have been admitted. We are satisfied, however, that the trial court did find that the defendant consented to the search. The defendant had moved again to suppress the weapons and requested that the trial court rule whether there was consent to the search. I R. 106. The trial court denied the motion to suppress. I R. 67. In the court's minutes, it is reflected that the trial court "indicated that consent had been given." I R. 74. The record supports this conclusion, see II R. 196–204, 222–23, 237, and we decline to disturb it.[16]

## V

Lastly defendant contends that if his confession was not admissible there is insufficient evidence of his guilt. The argument fails because we are convinced the confession was properly admitted. In addition there was testimony that defendant transported weapons from Idaho to Utah, II R. 15–25, 53–59, 77–86, 121–39, 162–65, and that he exercised dominion and control over them. II R. 15–25, 77–81, 121–39, 162–65. Defendant stipulated that the weapons introduced as evidence were found in the search of the motorhome. II R. 219. Additionally, there was testimony that he possessed the machine gun. II R. 167–71. Accordingly there was sufficient evidence to sustain the convictions.

AFFIRMED.

(1973). Thus, it is irrelevant whether there was probable cause for the search.

**16.** The vehicle was stopped because of reports that a woman was being held against her will. Defendant argues that, assuming the initial stop was legal, when the police learned that the woman was not a captive, the vehicle should have been free to depart. Thus, any search after learning that the woman was a willing companion of the defendant was in violation of the Fourth Amendment. We disagree. As we explained, the trial court found that defendant consented to the search. Hence, the search did not violate his Fourth Amendment rights. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).