**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 28 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

JAMES WARDEL QUARY,

      Defendant-Appellant.

No. 97-3213
(D.C. No. 95-40083-08-SAC)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **BRORBY**, **McKAY** and **EBEL**, Circuit Judges.

In March 1997, following a nine-day jury trial, defendant-appellant James

Wardel Quary was convicted on 80 counts of federal drug- and drug-related

offenses in the United States District Court for the District of Kansas, and was

sentenced to life imprisonment. Quary now appeals his convictions, arguing that

the district court erred in (1) failing to declare a mistrial based on the

government's intentional destruction of exculpatory evidence; (2) denying defense

counsel's motion under Fed. R. Crim. P. 17(b) to subpoena Lexie Smith, a

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. This court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

codefendant, to testify on Quary's behalf; (3) granting the government's motion to quash defense counsel's subpoena requesting documents relating to codefendant Elinor Preston's plea agreement with the government; and (4) permitting Renee Watkins, a possible defense witness, to assert a blanket Fifth Amendment privilege against self-incrimination after the government warned her that she was subject to an ongoing criminal investigation.   We affirm.

**FACTS**

Quary's appeal is part of a trio of criminal cases before us involving a large crack cocaine distribution ring in Kansas.  In this case, a total of eight defendants[1] were named in four iterations of a multi-count indictment charging various drug trafficking offenses.  Quary alone went to trial; the other seven defendants entered pleas of guilty at various points in time, the last being Lexie Lee Smith, who reached a plea agreement with the government during jury selection.  See companion case  United States v. Smith, No. 97-3266.  Betty Watkins was indicted individually in a separate but related case, and was convicted on possession and conspiracy charges.  See companion case United States v. Watkins, No.  97-3216.

---

[1]These defendants were James Quary, Bernard Eugene Preston, Elinor Preston, Demond Wesley Bridges, Lexie Lee Smith, Lori Smith, Lester Ervin Smith, Jr., and Edward Tyrone Merritt.

We present some of the background facts below; additional facts are set forth in our discussion of the issues Quary raises on appeal.

In May 1994, the DEA began to assist local law enforcement in investigating a suspected drug trafficking operation that encompassed the cities of Paola, Ottawa, Lawrence, Topeka, Emporia, and Kansas City, Kansas. DEA Agent Thomas Walsh worked with a confidential informant to gather information on the distribution ring, and eventually was able to make controlled purchases of crack cocaine from several members of the group.

Three of Quary's alleged coconspirators – Bernard Preston, Elinor Preston, and Demond Bridges – pled guilty to drug conspiracy charges and testified for the government at Quary's trial pursuant to plea agreements. According to their testimony, Quary controlled the drug ring, which distributed crack cocaine through several Kansas communities, and which involved approximately 25 coconspirators and as many as 75 sellers in various communities. The witnesses testified that the coconspirators were members of a gang, of which Quary was a founding member; the group considered itself affiliated with the "Bloods."[2]

---

[2]Several of the gang members who were codefendants in this case are related. Bernard Preston is a cousin of both Quary and of Lexie Smith; Bernard Preston and Elinor Preston are siblings. In addition, Quary dated Renee Watkins and fathered two of her children; Renee is the daughter of Betty Watkins, who, as noted, was indicted separately in a companion case. Renee Watkins also dated at various times Bernard Preston and Demond Bridges, two of the government's witnesses against Quary.

Quary testified at trial, denying that he was aware of or participated in any of the alleged crimes. Additional defense witnesses testified that he was neither a drug dealer nor a gang member.

After deliberating a day and a half, the jury returned a verdict finding Quary guilty on all counts.[3] Quary received a sentence of life imprisonment, and he now appeals.

## DISCUSSION

Quary raises four issues on appeal. We find each of his arguments to be without merit, and affirm.

A. Government's Intentional Destruction of Evidence

Quary first contends that the district court erred in failing to declare a mistrial based on the government's intentional destruction of an audiotape of Betty Watkins' post-arrest statements to law enforcement officers, in which Watkins declared that Quary was not involved in drug dealing. This tape is the centerpiece of one of the companion cases to this appeal, United States v. Watkins, No. 97-3216.

Following her arrest, Betty Watkins was interviewed by Agent Thomas Walsh and Tim Cronin, a local law enforcement officer. During this audiotaped

---

[3]At the close of evidence, the government moved to dismiss Count 17, as the controlled substance charged in that count had inadvertently been destroyed before being tested. The jury convicted Quary on the remaining counts.

interview, Watkins apparently admitted to possessing crack cocaine that the officers discovered upon executing a search warrant at her house; however, she also insisted that Quary did not have anything to do with drug trafficking.

After summarizing what he felt was significant from the interview into two paragraphs of a report, Agent Walsh destroyed the tape itself. He testified at Watkins' trial that he did not consider Watkins' statements to be exculpatory because he believed she was lying about Quary.

Defense counsel in Quary's trial did not learn of the existence of this tape until mid-trial. When defense counsel sought Watkins' testimony, she asserted her Fifth Amendment privilege against self-incrimination and refused to testify. Defense counsel then moved to introduce the tape, only to discover that it had been destroyed. The government provided defense counsel with transcripts of Agent Walsh's and Officer Cronin's testimony at Watkins' trial, and both officers testified at Quary's trial. Defense counsel nonetheless moved for a mistrial based on the government's destruction of the tape. The court denied the motion, ruling that the tape was inadmissible hearsay, such that the government's destruction of the tape did not prejudice the defendant.

We agree with the district court that, for purposes of Quary's trial, the government's intentional destruction of the tape is irrelevant, because even if the tape still existed, it would be inadmissible under Fed. R. Evid. 804(b)(3).

Rule 804(b)(3) provides:

> **Statement against interest.** A statement against interest which was at the time of its making so far contrary to the defendant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. <u>A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.</u>

Fed. R. Evid. 804(b)(3) (emphasis added).

Thus, "[a] defendant seeking to admit hearsay evidence under Rule 804(b)(3) to exculpate himself must show '(1) an unavailable declarant; (2) a statement against penal interest; and (3) sufficient corroboration to indicate the trustworthiness of the statement." <u>United States v. Spring</u>, 80 F.3d 1450, 1460-61 (10th Cir. 1996) (quoting <u>United States v. Porter</u>, 881 F.2d 878, 882 (10th Cir.), <u>cert. denied</u>, 493 U.S. 944 (1989)). "Rule 804(b)(3) itself states that 'corroborating circumstances [must] *clearly* indicate the trustworthiness of the statement.'" <u>Id.</u> at 1461 (quoting Fed. R. Evid. 804(b)(3)) (emphasis added).

Having asserted her Fifth Amendment privilege against self incrimination, Watkins was unavailable; in addition, her statements to the officers during the

- 6 -

interview were at least partly against her penal interest,[4] to the extent that they inculpated her on drug possession. However, Quary must still show that Watkins' statements were sufficiently trustworthy under Rule 804(b)(3) to warrant admission.

We review a court's evidentiary rulings for abuse of discretion. See Spring, 80 F.3d at 1460. Likewise, "[t]he determination of the sufficiency of such corroborating evidence lies within the sound discretion of the trial court, which is aptly situated to weigh the reliability of the circumstances surrounding the declaration." Id. at 1461 (internal quotations omitted).

Here, although the district court mistakenly believed that Watkins' statements were made after her conviction (rather than shortly after her arrest), the court correctly observed that Watkins had a personal relationship to Quary through her daughter, Renee. Further, Watkins' denial of Quary's involvement in drug trafficking was, in fact, not a statement against her self-interest because it tended to support her self-interest that she was not involved in any conspiracy with Quary. Consequently, it is reasonable to assume that Watkins had a motive to lie about Quary's involvement in order to protect both him and herself.

---

[4]Watkins admitted possessing the drugs found as a result of the search of her house, but she denied participation in any conspiracy with Quary or the other charged defendants.

Quary has not established any corroborating circumstances to show, let alone corroborating circumstances sufficient to "clearly indicate," the trustworthiness of the statements. We therefore cannot conclude that the district court abused its discretion in determining that Watkins' statements did not bear sufficient indicia of reliability to justify their admission. Because Watkins' statement would have been inadmissible had it been produced, the government's intentional destruction of the audiotape did not prejudice Quary's defense.

B.  Defendant's Rule 17(b) Motion

Quary next contends that the district court erred in denying defense counsel's motion under Fed. R. Crim. P. 17(b) to produce Quary's codefendant, Lexie Smith, as a witness for the defense.[5]  The district court denied the motion, stating that "I'm not going to order this witness under 17(b) until you've had an opportunity to express to the Court what his testimony will be by reason of your personal knowledge."  Defense counsel only offered the uncorroborated speculation of his client, Quary, that Lexie Smith, if called and found competent

_____

[5]Although defense counsel captioned his motion as one under Fed. R. Crim. P. 17(b), it appears in essence to have been an application for a writ of habeas corpus ad testificandum. Under 28 U.S.C. § 2241(c)(5), a federal court may in its discretion, issue such a writ to secure the appearance of a state or federal prisoner as a witness in federal court. See 28 U.S.C. § 2241(c)(5); United States v. Cruz-Jimenez, 977 F.2d 95, 99 (3d Cir. 1992).  In any event, the procedural considerations of Fed. R. Crim. P. 17(b) apply to a criminal defendant's request for the issuance of such a writ.

to testify, would deny that he was involved with Quary in the sale of drugs. The district court had offered defense counsel "help from the Marshals service or anything else . . . to make arrangements for a conversation between [counsel] and [Lexie Smith]" to see if his testimony would, in fact, be helpful to Quary and thereby to determine whether a writ under § 2241(c)(5) would be warranted to bring Lexie Smith to trial to testify. Notwithstanding this offer, the record before us shows that defense counsel for Quary offered nothing other than Quary's personal belief as to what Lexie would say if called to testify.

We review the district court's refusal to issue a subpoena under Rule 17(b) for abuse of discretion. See United States v. Hernandez-Urista, 9 F.3d 82, 83 (10th Cir. 1993).

Fed. R. Crim. P. 17(b) provides:

The court shall order at any time that a subpoena be issued for service on a named witness upon an ex parte application of a defendant upon a satisfactory showing that the defendant is financially unable to pay the fees of the witness and that the presence of the witness is necessary to an adequate defense.

To show that the witness is "necessary," the defendant must establish that the witness' testimony would be "relevant, material, and useful" to his defense. See id. at 84. Evidence is "material" if there is a "reasonable likelihood that the testimony could have affected the judgment of the trier of fact." United States v. Cruz-Jimenez, 977 F.2d 95, 100 (3d Cir. 1992) (internal quotations omitted). A

defendant must demonstrate a particularized need for the testimony; "[t]he failure to set forth the expected testimony of a witness is an adequate ground for the denial of a request for a subpoena under Rule 17(b)." Hernandez-Urista, 9 F.3d at 84. Likewise, the necessity for the testimony is undermined where it would be merely cumulative of other testimony. See id.

Here, defense counsel informed the trial court that Lexie Smith had told Quary that he would testify that Quary was not involved in drug trafficking.[6] Quary argues that Smith's potential testimony would have gone to the heart of the conspiracy charge, and would have refuted the testimony of Bernard Preston, Elinor Preston, and Demond Bridges, the three indicted coconspirator witnesses who testified against Quary pursuant to plea agreements.

However, we agree with the government that Smith's proffered testimony was purely speculative and would have been, in any event, merely cumulative of other defense witnesses' statements that Quary was not a drug dealer. Moreover, although we discern nothing in Rule 17(b) or in this Circuit's case law interpreting that rule that requires counsel seeking a Rule 17(b) subpoena to make a proffer to the court regarding the witness' expected testimony based on

---

[6] At oral argument on appeal, Quary's counsel also represented that Lexie Smith also proposed to testify that Bernard Preston – not Quary – was the leader of the distribution ring. However, counsel has not referred us to any part of the record demonstrating that this aspect of Smith's potential testimony was made known to the trial court.

counsel's <u>personal</u> knowledge, the judge's assessment of counsel's proffer is subject to abuse of discretion review. We conclude that there was no abuse of discretion in these circumstances, where counsel could offer only a vague indication of Lexie Smith's proposed testimony, and where the judge appears to have made a trial management decision not to prolong an already lengthy trial.

In short, Quary's counsel failed to establish that Smith's testimony was either material or necessary to his defense, and the trial court's denial of his Rule 17(b) motion was not an abuse of discretion.

C.  Defendant's Subpoena Duces Tecum

Quary next contends that the district court erred in granting the government's motion to quash a subpoena seeking documents containing possible impeachment evidence.

Elinor Preston, an indicted coconspirator, testified for the government at Quary's trial pursuant to a plea agreement. On cross examination, she stated that she had no idea until after she had entered the plea agreement that the government would require her to testify against Quary. Defense counsel subsequently served her attorney with a subpoena duces tecum to gain access to communications between Elinor Preston's attorney and the government regarding the terms of

Elinor's plea agreement for purposes of impeaching her testimony with respect to her knowledge that the government expected her to testify against Quary.[7]

The district court granted the government's motion to quash the subpoena in part because it decided that the evidence sought was protected by the attorney/client privilege.

"[W]e consider the circumstances and the correctness of the rulings on subpoenas under the abuse of discretion standard." United States v. Greschner, 802 F.2d 373, 378 (10th Cir. 1986).

Assuming, without holding, that the communications were not protected by the attorney/client privilege, and that the communications regarding the plea agreement were otherwise admissible (in that Quary could somehow prove that Elinor Preston had personal knowledge of any material that might be contained in a letter between her counsel and the government), we nonetheless find that any error was harmless, as Quary has failed to demonstrate how the exclusion of this potential impeachment evidence – on the single point of whether Elinor Preston knew before signing her plea agreement that she would be called to testify against Quary – influenced the jury's verdict.

---

[7]We note that defense counsel rejected the government's offer to stipulate that Elinor Preston's plea agreement stated that in order for her sentence to be reduced, she would have to testify. (Tr. 1637-38.)

D.  Defense Witness' Assertion of Fifth Amendment Right Against Self-Incrimination

Finally, Quary contends that the district court erred in permitting Renee Watkins to assert her Fifth Amendment privilege against self-incrimination.

During trial, defense counsel indicated that he intended to call Renee Watkins, Quary's girlfriend and mother of two of his children, as a defense witness.  Defense counsel believed her testimony would refute statements by the alleged coconspirators regarding Quary's alleged drug activities.  However, Renee Watkins asserted her Fifth Amendment privilege against self-incrimination after being notified by the government that she was subject to an ongoing investigation.

Quary argues that the government's action amounted to intimidation and misconduct, and that the court erred in permitting her to assert a blanket Fifth Amendment privilege against self-incrimination.

We find Quary's contentions meritless.  First, there is no credible evidence in the record that the government told Renee Watkins that she was under investigation in order to pressure her not to testify.   Second, a court can order a witness to testify when a witness desires to protect his or her Fifth Amendment rights "only if it is perfectly clear that the witness is mistaken and the answers cannot possibly tend to incriminate" him or her.  United States v. Hart, 729 F.2d 662, 670 (10th Cir. 1984) (internal quotations omitted).  Given that defense

counsel intended to question Renee Watkins regarding her connections to Quary and the drug conspiracy, including whether Renee personally had distributed crack cocaine, it is clear that counsel's proposed questions might have elicited incriminating statements. Accordingly, the district court properly concluded that Renee's silence was justified, and properly allowed her to invoke her Fifth Amendment privilege.[8]

## CONCLUSION

Because we find no merit in any of the issues raised on appeal, we AFFIRM Quary's convictions.

ENTERED FOR THE COURT

David M. Ebel
Circuit Judge

---

[8]We note that Quary would not have been permitted to force the witness to take the stand just to invoke her Fifth Amendment privilege with respect to individual questions. See Hart, 729 F.2d at 670; United States v. Martin, 526 F.2d 485, 487 (10th Cir. 1975) (trial court did not err in refusing to permit witness to be called to the stand and thus be compelled to invoke his Fifth Amendment privilege before the jury, where parties knew that witness intended to invoke the privilege).