UNITED STATES of America, Plaintiff–Appellee,

v.

James EASTER, Jr., Defendant–Appellant.

No. 91–6103.

United States Court of Appeals, Tenth Circuit.

Dec. 10, 1992.

Frank B. Kirk, Jr., Oklahoma City, OK, for defendant-appellant.

Timothy D. Leonard, U.S. Atty., Leslie M. Kaestner, Asst. U.S. Atty., Oklahoma City, OK, for plaintiff-appellee.

Before SEYMOUR, ANDERSON, and BALDOCK, Circuit Judges.*

BALDOCK, Circuit Judge.

Defendant James Easter appeals his conviction and sentence following a jury verdict on various conspiracy and substantive charges relating to distribution and possession of cocaine base. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(1).

This prosecution originates from Defendant's arrest by Drug Enforcement Administration (DEA) officials outside an Oklahoma City, Oklahoma hotel room. Prior to Defendant's arrival at the hotel room, Fenetrius Alexander had been arrested for possession of approximately one kilogram of cocaine base at the Los Angeles International Airport. Alexander then agreed to cooperate with DEA agents and made a controlled delivery of the cocaine base to Defendant, her contact in Oklahoma City.

Alexander was accompanied to the hotel room in Oklahoma City by DEA agents, and the room was placed under video, audio, and personal surveillance. Alexander then contacted Defendant and arranged to have him meet her at the room. Defendant arrived at the designated hotel room where he received the cocaine base from Alexander. When he left the room, he was immediately arrested by DEA agents.

Defendant agreed to cooperate with law enforcement officials, and he contacted Roderick Piggee, later identified as the source of the cocaine base. Piggee directed Defendant to deliver nine ounces of the cocaine base to Lamonte Kirksey. Defendant then contacted Kirksey who appeared at the same monitored hotel room, received his share of the cocaine base, and was promptly arrested. Piggee was later arrested at Will Rogers World Airport in Oklahoma City.

Piggee entered a plea of guilty and is currently appealing his conviction and sentence. Kirksey signed a plea agreement with the government and testified at trial against Defendant. Alexander was convicted in California for her participation in the offense and also testified at Defendant's trial.

Defendant was charged in a four count indictment. Count 1 charged Defendant with conspiracy to possess with intent to distribute and conspiracy to distribute cocaine base. 21 U.S.C. § 846. Count 2 charged Defendant with unlawful travel in interstate commerce with intent to promote illegal activity. 18 U.S.C. §§ 1952(a)(3) and (2). Count 3 charged Defendant with use of the telephones to facilitate a conspiracy. 21 U.S.C. § 843(b). Count 4 charged Defendant with unlawful possession with intent to distribute approximately one kilogram of cocaine base. *Id.* § 841(a)(1); 18 U.S.C. § 2.

Following a jury trial, Defendant was convicted on all four counts. On appeal, Defendant raises the following issues: (1) the district court erred in denying his motions for an evidentiary hearing and new trial based on juror bias; (2) the admission of prior acts evidence under Fed.R.Evid. 404(b) was improper; (3) his sentence violates the Eighth Amendment; (4) 21 U.S.C. § 841(b)(1) and U.S.S.G. § 2D1.1 are void for vagueness; and (5) 21 U.S.C. § 841(b)(1) and U.S.S.G. § 2D1.1 violate equal protection principles.

I.

■ Defendant's claim of juror bias is based on his allegation that after the jury returned its verdict, his sister recognized one of the jurors as a school bus driver who had driven Defendant to and from junior high school, at a time in his life when Defendant admits to being "unruly." Defendant claims he then, for the first time, recognized the juror and made a motion for an evidentiary hearing in order to interview or question the particular juror about potential bias toward Defendant based on the alleged prior contact. Defendant also moved for a new trial under

* The parties agree that oral argument is unnecessary and the case may be submitted on the briefs. Fed.R.App.P. 34(f); 10th Cir.R. 34.1.2.

The case therefore is ordered submitted without oral argument.

Fed.R.Crim.P. 33 alleging that he was deprived of a fair and impartial jury. The district court denied both motions. We review for an abuse of discretion. *United States v. Ware*, 897 F.2d 1538, 1542 (10th Cir.), *cert. denied*, 496 U.S. 930 110 S.Ct. 2629, 110 L.Ed.2d 649 (1990).

### A.

We first address Defendant's claim that the district court erred in denying his motion for an evidentiary hearing based on the allegation of juror bias. When confronted with a claim of juror bias, the trial court has wide discretion in deciding how to proceed. *United States v. Bradshaw*, 787 F.2d 1385, 1389 (10th Cir. 1986). Although the ordinary course is to require a hearing or inquiry into nonfrivolous allegations of juror misconduct, *United ed States v. Ramsey*, 726 F.2d 601, 604 (10th Cir.1984), such an inquiry is not warranted when only "thin allegations of jury misconduct" are present. *United States v. Cattle King Packing Co.*, 793 F.2d 232, 243 (10th Cir.), *cert. denied*, 479 U.S. 985, 107 S.Ct. 573, 93 L.Ed.2d 577 (1986).

In its order denying Defendant's motion for an evidentiary hearing, the district court found that Defendant's allegations were insufficient to warrant a full investigation into the juror's alleged bias. The court found the record devoid of any indications that the juror knew or even recognized Defendant, and further noted that the juror never gave any indication that he was unable or unwilling to remain impartial despite the court's numerous inquiries into the jury's ability to remain fair and impartial. Absent evidence to the contrary, we presume that jurors remain true to their oath and conscientiously observe the instructions and admonitions of the court. *United States v. Greschner*, 802 F.2d 373, 381 (10th Cir.1986), *cert. denied*, 480 U.S. 908, 107 S.Ct. 1353, 94 L.Ed.2d 523 (1987).

In *Cattle King Packing Co.*, we affirmed the trial court's refusal to conduct an evidentiary hearing based on possible jury misconduct despite a post-conviction letter from a juror to defense counsel stating that she had not based her verdict on the testimony of key witnesses in the case. 793 F.2d at 243. We held that the charge of misconduct based on the juror's letter amounted to a "thin" allegation that did not warrant an evidentiary hearing. *Id.* Likewise, Defendant's post-verdict claim of possible juror misconduct is based on pure conjecture that a juror *may* have recognized Defendant and *may* have based his vote on something other than the evidence before him. Defendant's allegations here are even "thinner" than those in *Cattle King*. We conclude that the district court's denial of Defendant's motion for an evidentiary hearing was not an abuse of discretion.

### B.

Defendant also contends that the district court erred in denying his motion for a new trial based on the same allegation of juror bias. We disagree.

A new trial based on juror misconduct is appropriate only where there is either a showing of actual bias or circumstances "compel an imputation of inherent bias to the juror as a matter of law." *Bradshaw*, 787 F.2d at 1390 (quoting *Williams v. United States*, 418 F.2d 372, 377 (10th Cir.1969)). In the instant case, there was no express admission by the juror that he was biased or that he even recognized Defendant. Moreover, Defendant does not allege that the juror deliberately concealed, or had any motive to conceal, previous contact with Defendant. *See United States v. Perkins*, 748 F.2d 1519, 1532 (11th Cir.1984) (bias presumed where juror intentionally concealed prior business relationship with Defendant). Defendant fails to allege any facts that would require a finding that the juror was actually or presumptively biased. For these reasons, we affirm the district court's dismissal of Defendant's motion for a new trial.

### II.

Defendant also challenges the district court's denial of his motion for a mistrial based on the admission of prior acts

evidence under Fed.R.Evid. 404(b). We review for abuse of discretion. *United States v. Record,* 873 F.2d 1363, 1373 (10th Cir.1989).

■ During the government's case in chief, the district court, over Defendant's objection, admitted evidence of Defendant's prior dealings in cocaine base with coconspirator Alexander dating back to the Spring of 1990. Initially, the district court allowed the evidence as "part of the conspiracy within the time frame;" however, after the noon recess, Defendant renewed his objection stating that the evidence was "arguably 404(b) material," and he motioned for a mistrial. After hearing from the government that the evidence was proper 404(b) evidence and that there was no prejudice, the court denied Defendant's motion. After a careful review of the record, we find that the evidence is clearly admissable under Fed.R.Evid. 404(b).[1]

The admissability of 404(b) evidence is guided by the Supreme Court's decision in *Huddleston v. United States,* 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988). In *Huddleston,* the Supreme Court explained that protection from unfair prejudice of 404(b) evidence comes from: (1) Rule 404(b)'s requirement that the evidence be offered for a proper purpose; (2) Rule 402's relevancy requirement; (3) Rule 403's requirement that the probative value of the evidence not be substantially outweighed by its potential for unfair prejudice; and (4) Rule 105's requirement that the trial court shall, upon request, instruct the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted. *Id.* at 691–92, 108 S.Ct. at 1502. *See also Record,* 873 F.2d at 1373–76.

■ The prior acts evidence in the instant case satisfies the *Huddleston* test.[2] "We have previously recognized the highly probative value of uncharged prior acts evidence to show motive, intent, knowledge or plan in the context of a conspiracy prosecution." *Record,* 873 F.2d at 1375. This is especially true where the uncharged prior acts are close in time and similar in method to the charged conspiracy. *Id.* (citing *United States v. Bridwell,* 583 F.2d 1135, 1140 (10th Cir.1978)). Here, Defendant's prior uncharged acts occurred only a few months prior to the date of the indictment, involved one of his coconspirators, and involved distribution of cocaine base— the same scheme with which Defendant was eventually charged. In this context, the prior acts evidence is highly relevant to show Defendant's plan or scheme to possess and distribute cocaine base. Furthermore, the prior acts evidence tends to refute Defendant's claim at trial that he did not know that the bag he was arrested with contained cocaine base.

■ Furthermore, the highly probative value of the evidence was not substantially outweighed by its potential for unfair prejudice. While the district court did not expressly rule on the probative versus prejudicial value of the evidence, it did so implicitly by denying Defendant's motion for mistrial after hearing the government's statement concerning prejudice. *See United States v. Fingado,* 934 F.2d 1163, 1165–66 (10th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 320, 116 L.Ed.2d 262 (1991). Due to the substantial deference we give to a trial court's Rule 403 ruling, *see United States v. Keys,* 899 F.2d 983, 987 (10th Cir.1990), we will not disturb this determination. Moreover, we note that the Defendant

---

**1.** Federal Rule of Evidence 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

**2.** In *United States v. Kendall,* 766 F.2d 1426, 1436 (10th Cir.1985), *cert. denied,* 474 U.S. 1081,

106 S.Ct. 848, 88 L.Ed.2d 889 (1986), we required the government and the trial court to specifically identify the purpose for which the evidence is being offered and the connection between the evidence and that purpose. In *Record,* however, we held that even if the basis for admission has not been specifically articulated, the error is harmless as long as a proper purpose is apparent from the record. 873 F.2d at 1375 n. 7.

failed to raise a Rule 403 objection at trial. *See United States v. Esparsen,* 930 F.2d 1461, 1476 n. 18 (10th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 882, 116 L.Ed.2d 786 (1992). We conclude that the district court did not abuse its discretion in admitting the prior acts evidence.[3]

### III.

Defendant next contends that his sentence violates the Eighth Amendment. The essence of Defendant's claim, as we understand it, is twofold. First, Defendant argues that he rendered substantial assistance to the government in the arrest of a coconspirator, and the court should have been permitted to take judicial notice of his substantial assistance when imposing his sentence. Second, Defendant argues that the disproportionality of his sentence as compared to the sentences received by his coconspirators, constitutes cruel and unusual punishment. We find Defendant's arguments without merit.

### A.

Upon his arrest, Defendant agreed to assist the government and did so by persuading Kirksey to come to the hotel for a cocaine deal while federal agents monitored the room. Kirksey was thereupon arrested. By the time of Defendant's trial, all other coconspirators, including Kirksey, had been convicted of lesser offenses, or had pled guilty to lesser offenses, and Kirksey and Alexander testified against Defendant. Defendant was the only coconspirator to request a jury trial. Defendant's guideline sentence was 235 months, and he claims that the longest sentence of any of his coconspirators was five years.[4] The Sentencing Guidelines provide that "upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart downward from the guidelines." U.S.S.G. § 5K1.1.

■ Defendant's argument that the court should be permitted to depart downward under § 5K1.1 without a motion from the government fails in light of our holding in *United States v. Horn,* 946 F.2d 738 (10th Cir.1991). In *Horn,* we held that the condition that the government move for a reduction under § 5K1.1 does not offend due process nor equal protection. *Id.* at 746. The government's power under § 5K1.1 is no different from the government's exclusive authority over what charges to bring or whether to charge a defendant at all. *Id.* (citing *United States v. Gardner,* 931 F.2d 1097, 1099 (6th Cir. 1991)). As in *Horn,* Defendant's first argument is merely calling for a reallocation of power in the sentencing process, a call that is not constitutionally required and therefore will not be heard. *See id.*

■ Defendant's argument also suggests that he seeks to challenge the government's motives for failing to move for a § 5K1.1 reduction. While a court may not reduce a guidelines sentence under § 5K1.1 absent a government motion, *Horn,* 946 F.2d at 746, the government may not withhold such a motion for a constitutionally impermissible reason. *Wade v. United States,* —— U.S. ——, 112 S.Ct. 1840, 118 L.Ed.2d 524 (1992). Defendant's exercise of his constitutional right to a jury trial would be an improper basis for the government to withhold a motion.

■ Nevertheless, Defendant did not raise this argument in the district court. While we have reviewed sentencing errors that were not raised in the district court under a plain error standard, *United*

---

**3.** The final requirement of *Huddleston* does not apply in this case inasmuch as Defendant failed to request a jury instruction limiting the use of the prior acts evidence.

**4.** Defendant fails to cite any factual basis in the record for his contention that the longest sentence received by a coconspirator was five years. Further, we have reviewed the trial transcript and are unable to find any mention of the sentences received by Defendant's coconspirators. Although we may decline to entertain Defendant's argument due to this absence in the record, *see United States v. Jordan,* 890 F.2d 247, 254 (10th Cir.1989), we proceed assuming arguendo that the longest sentence received by Defendant's coconspirators was five years.

*States v. Orr*, 864 F.2d 1505, 1508 (10th Cir.1988), plain error review is not appropriate when the alleged error involves the resolution of factual disputes. *See United States v. Saucedo*, 950 F.2d 1508, 1518–19 (10th Cir.1991). Plain error review is appropriate "only on appeal from a trial infected with error so 'plain' the trial judge and prosecutor were derelict in countenancing it...." *United States v. Frady*, 456 U.S. 152, 163, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816 (1982). It is untenable to suggest that a trial court or prosecutor was "derelict" in failing to recognize an alleged error based on factual issues never raised, much less litigated. Defendant's suggestion regarding the government's motive for failing to bring a motion raises the factual issue of, not only the government's motive, but whether the Defendant in fact provided substantial assistance. Accordingly, because Defendant failed to raise this fact-dependent issue in the court below, he has waived it on appeal, and plain error review does not apply. *See Saucedo*, 950 F.2d at 1508.[5]

### B.

■ In regard to Defendant's second argument, the Eighth Amendment requires that a sentence not be grossly disproportionate to the crime. *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). Our review of an Eighth Amendment proportionality claim must consider "the gravity of the offense and the harshness of the penalty" and insure against gross disproportionality. *Solem*, 463 U.S. at 290–91, 103 S.Ct. at 3009–10; *see also*

*Harmelin v. Michigan*, ── U.S. ──, ──, 111 S.Ct. 2680, 2707, 115 L.Ed.2d 836 (1991) (Kennedy, J., concurring). Within this limitation, penalty determinations are properly left to Congress or the legislature. *United States v. Hughes*, 901 F.2d 830, 832 (10th Cir.), *cert. denied*, ── U.S. ──, 111 S.Ct. 163, 112 L.Ed.2d 128 (1990) (citing *United States v. Gourley*, 835 F.2d 249, 252–53 (10th Cir.1987), *cert. denied*, 486 U.S. 1010, 108 S.Ct. 1741, 100 L.Ed.2d 204 (1988)).

■ Defendant has not alleged that his sentence is grossly disproportionate to his crimes. This is the critical factor in assessing whether a sentence is so disproportionate as to constitute cruel and unusual punishment. *See Harmelin*, ── U.S. at ──, 111 S.Ct. at 2707 (Kennedy, J., concurring). Nonetheless, even if Defendant had properly alleged an Eighth Amendment proportionality claim, it would fail. Five members of the Supreme Court have agreed that a sentence of life without possibility of parole for possession of 650 grams of cocaine base did not violate the Eighth Amendment. *See Harmelin*, ── U.S. ──, 111 S.Ct. 2680 (opinion of Scalia, J.); *id.* (Kennedy, J., concurring). *See also Hutto v. Davis*, 454 U.S. 370, 372–73, 102 S.Ct. 703, 704, 70 L.Ed.2d 556 (1982) (forty year sentence for possession with intent to distribute nine ounces of marijuana did not violate Eighth Amendment). It therefore follows that a 235 month sentence for possession with intent to distribute a kilogram of cocaine base does not violate the Eighth Amendment.

---

**5.** Contrary to the dissent's suggestion that we are randomly "picking and choosing" among which of Defendant's claims to address on the merits, our decision to forego addressing the merits of Defendant's improper motive claim is based on our interpretation of the applicable law. Defendant's improper motive claim is significantly different from his other claims—the merits of which we do address despite Defendant's failure to raise them below—in that Defendant's improper motive claim is fact-dependant and we have no record to review in this regard. Challenges made for the first time on appeal do not *automatically* merit plain error review simply because they raise constitutional issues. *See United States v. Dewitt*, 946 F.2d 1497, 1501–02 (10th Cir.1991), *cert. denied sub*

*nom., Rison v. United States*, ── U.S. ──, 112 S.Ct. 1233, 117 L.Ed.2d 467 (1992) (defendant's failure to raise Fourth Amendment issue below waived issue on appeal); *United States v. Hart*, 729 F.2d 662, 665 (10th Cir.1984), *cert. denied*, 469 U.S. 1161, 105 S.Ct. 914, 83 L.Ed.2d 927 (1985) (defendant's failure to raise Miranda issue below waived issue on appeal). We address Defendant's other claims because we have a sufficient record; however, where, as here, there is a fact-dependant challenge and an insufficient record, we, in the exercise of our discretion, refuse to do so. *See United States v. Cheama*, 783 F.2d 165, 168 (10th Cir.1986) (whether to consider issues not decided below is within our sound discretion).

## IV.

■ Defendant argues for the first time on appeal that 21 U.S.C. § 841(b)(1) and U.S.S.G. § 2D1.1 are unconstitutionally vague and therefore void for failing to define the term "cocaine base." Because Defendant failed to raise this issue below we review only for plain error. To constitute plain error, the deficiency must be obvious and substantial and affect the fundamental fairness, reputation, or integrity of the trial. *United States v. Jefferson,* 925 F.2d 1242, 1254 (10th Cir.1991). However, we apply the plain error rule less rigidly when reviewing a potential constitutional error. *Id.*

In the Anti–Drug Abuse Act of 1986, Congress amended 21 U.S.C. § 841(b)(1) to provide for enhanced penalties for narcotic offenses that involve specified amounts of controlled substances. *See* P.L. 99–570, § 1002(2), 100 Stat. 3207 (1986). As a result, § 841(b)(1) and the corresponding Sentencing Guideline, U.S.S.G. § 2D1.1, impose a substantially greater penalty for offenses involving cocaine base than for offenses involving "cocaine, its salts, optical and geometric isomers, and salts of isomers." 21 U.S.C. § 841(b)(1).[6] In *United States v. Turner,* 928 F.2d 956 (10th Cir.1991), we upheld the resulting 100–to–1 cocaine-to-cocaine base sentencing ratio against a due process challenge and quoted with approval those cases from other circuits that have upheld the statutory and guideline provisions against vagueness challenges. *Id.* at 960. *See also United States v. Jackson,* 968 F.2d 158 (2nd Cir.1992); *United States v. Avant,* 907 F.2d 623 (6th Cir.1990); *United States v. Van Hawkins,* 899 F.2d 852 (9th Cir.1990); *United States v. Barnes,* 890 F.2d 545 (1st Cir.1989), *cert. denied,* 494 U.S. 1019, 110 S.Ct. 1326, 108 L.Ed.2d 501 (1990); *United States v. Williams,* 876 F.2d 1521 (11th Cir.1989); *United States v. Brown,* 859 F.2d 974 (D.C.Cir.1988). Today, we join those circuits in holding that 21 U.S.C. § 841(b)(1)

and U.S.S.G. § 2D1.1 are not unconstitutionally vague and void on their face for failing to define the term "cocaine base."

■ A penal statute is void for vagueness if it: (1) fails to "define the criminal offense with sufficient definitiveness [so] that ordinary people can understand what conduct is prohibited," *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983), or it (2) fails to "establish minimal guidelines to govern law enforcement" so as to invite arbitrary and discriminatory enforcement. *Id.* at 358, 103 S.Ct. at 1858 (quoting *Smith v. Goguen,* 415 U.S. 566, 574, 94 S.Ct. 1242, 1248, 39 L.Ed.2d 605 (1974)). Vagueness challenges not implicating the First Amendment must be examined in light of the facts of the case at hand. *United States v. Mazurie,* 419 U.S. 544, 550, 95 S.Ct. 710, 714, 42 L.Ed.2d 706 (1975).

■ The statute and sentencing guideline, as Defendant does not dispute, make it clear that trafficking in cocaine, no matter what the form, will result in punishment. *Van Hawkins,* 899 F.2d at 854. Therefore, an ordinary person is on notice that trafficking in a form of cocaine, such as cocaine base, is prohibited conduct. *Id.* Section 841(b)(1) is merely a penalty provision and as such does not change the elements of cocaine trafficking offenses, rather it lengthens the penalties that Congress has already imposed for those offenses. *United States v. Levy,* 904 F.2d 1026, 1033 (6th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 974, 112 L.Ed.2d 1060 (1991). That the statute and sentencing guideline expose defendants to enhanced penalties based on legally significant factors does not make the statute void for vagueness. *See id.* at 1033. Here, Defendant does not dispute that the substance he possessed was a form of cocaine; therefore, 21 U.S.C. § 841(b)(1) and U.S.S.G. § 2D1.1 are not unconstitutionally vague as applied to the

---

**6.** Section 841(b)(1), for example, mandates the same sentence for offenses involving 50 grams of cocaine base as it does for offenses involving 5000 grams (5 kilograms) of cocaine. *Id.* § 841(b)(1)(A). The Sentencing Commission

has incorporated the same sentencing scheme into the guidelines, equating 1 gram of cocaine base to 100 grams of cocaine. *See* U.S.S.G. § 2D1.1(c)(3).

facts of this case for failing to give notice as to what conduct is prohibited.

Defendant also alleges that the statute and guideline are void for vagueness because Congress' failure to define cocaine base has led to arbitrary enforcement of the enhanced penalty provisions. Defendant specifically claims that because the statute and sentencing guideline fail to give the government sufficient guidance to determine whether a substance is cocaine base versus cocaine hydrochloride, the substance he possessed was arbitrarily classified as cocaine base.

■■■■ In all cases involving statutory construction "our starting point must be the language employed by Congress." *American Tobacco Co. v. Patterson,* 456 U.S. 63, 68, 102 S.Ct. 1534, 1537, 71 L.Ed.2d 748 (1982) (quoting *Reiter v. Sonotone Corp.,* 442 U.S. 330, 337, 99 S.Ct. 2326, 2330, 60 L.Ed.2d 931 (1979)). Moreover, absent evidence to the contrary, the ordinary meaning of the words used expresses legislative intent. *Id.* (citing *Richards v. United States,* 369 U.S. 1, 9, 82 S.Ct. 585, 590, 7 L.Ed.2d 492 (1962)). When Congress has used technical words or terms of art, the term must be given its technical or scientific meaning. *Corning Glass Works v. Brennan,* 417 U.S. 188, 201, 94 S.Ct. 2223, 2231, 41 L.Ed.2d 1 (1974).

■■■■ A "base" is defined as "a compound (a lime, a caustic alkali, or an *alkaloid*) capable of reacting with an acid to form a salt ..." *Webster's Third New International Dictionary,* 180 (3rd ed. 1981) (emphasis added). Accordingly, the plain language of the statute indicates that cocaine base is the alkaloid form of cocaine which is capable of reacting with an acid to form a salt. We recognized as much in *Turner,* stating that "cocaine base is the precipitate formed by removing an acid (e.g. hydrochloric acid) from a salt form (e.g. cocaine hydrochloride), leaving only the basic cocaine." 928 F.2d at 960 n. 1.

Indeed, the chemical formula for cocaine base is $C_{17}H_{21}NO_4$, while the formula for cocaine hydrochloride is $C_{17}H_{21}NO_4HCL$, thus supporting our statement in *Turner* that the distinguishing factor of cocaine base is the absence of hydrochloric acid. *United States v. Jackson,* 968 F.2d 158, 161 (2nd Cir.1992). *See also The Merck Index: An Encyclopedia of Chemicals, Drugs, and Biologicals* 383 (11th ed. 1989). As a result of their different chemical compositions, cocaine base and cocaine hydrochloride have distinct physical properties, including different melting points, solubility levels, and molecular weights. *See Jackson,* 968 F.2d at 161; *Turner,* 928 F.2d at 960 n. 1; *The Merck Index, supra,* at 383. Due to these chemical and physical differences, an individual qualified by knowledge, skill, experience, training, or education is capable of distinguishing between the two compounds. *Jackson,* 968 F.2d at 161; *Turner,* 928 F.2d at 960 n. 1. Accordingly, we hold that "cocaine base" is sufficiently defined and distinguishable from other forms of cocaine to prevent arbitrary and discriminatory enforcement.[7] *Jackson,* 968 F.2d at 162.

■■■■ In the present case, a DEA chemist testified that the substance in Defendant's possession was cocaine base. According to that expert witness, the "wet gooey cream color substance" found in Defendant's possession was a common form of crack or cocaine base and could be sold as is or dried out and cleaned up. Defendant presented no evidence to refute the expert's conclusion. This testimony makes it clear that the substance in Defendant's possession was not arbitrarily classified as cocaine base.

### V.

■■■■ Finally, Defendant asserts for the first time on appeal that the enhanced penalty scheme for offenses involving cocaine base, provided for by 21 U.S.C. § 841(b)(1)

---

7. While the legislative history of 21 U.S.C. § 841(b)(1) indicates that Congress amended the statute due to its concern over the increasing abuse of crack cocaine, *see United States v. Buckner,* 894 F.2d 975 (8th Cir.1990), nothing in the legislative history indicates that Congress intended "cocaine base" to be limited to crack cocaine. *See Jackson,* 968 F.2d at 162. Therefore, the plain language of the statute controls.

and U.S.S.G. § 2D1.1, offends constitutional equal protection guarantees. Defendant argues that blacks are more likely to possess cocaine base than whites who are more likely to possess cocaine hydrochloride. Therefore, his argument continues, providing lengthier sentences for possession of cocaine base than for an identical amount of cocaine hydrochloride violates his right to equal protection under the laws. We review for constitutional plain error. *See United States v. Jefferson*, 925 F.2d 1242, 1254 (10th Cir.1991).

Defendant concedes that § 841(b)(1) and U.S.S.G. § 2D1.1 are neutral on their face but argues that the statute and guideline have a disproportionate impact on blacks.[8] However, "even if a neutral law has a disproportionately adverse effect upon a racial minority, it is unconstitutional under the Equal Protection Clause only if that impact can be traced to a discriminatory purpose." *Personnel Adm'r v. Feeney*, 442 U.S. 256, 272, 99 S.Ct. 2282, 2292, 60 L.Ed.2d 870 (1979). Defendant has presented no evidence that either Congress or the Sentencing Commission adopted the more severe cocaine base penalties to further a racially discriminatory purpose. Therefore, the cocaine base sentencing scheme is subject only to rational basis review. *See Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976). Our rational basis analysis in *United States v. Turner*, 928 F.2d 956, 960 (10th Cir.1991), requires us to reject Defendant's claim.

AFFIRMED.

SEYMOUR, Circuit Judge, concurring and dissenting.

While I otherwise join the majority opinion in this case, I am unable to concur in Part IIIA. Easter contends that the government improperly withheld a motion to reduce his sentence under section 5K1.1 in retaliation for the exercise of his constitutional right to a jury trial. While recognizing that Easter's assertion, if true, would state a claim for relief, the majority nonetheless refuses to consider it, citing *United States v. Saucedo*, 950 F.2d 1508, 1518 (10th Cir.1991).

In my view, this case is distinguishable from *Saucedo*. The holding upon which the majority relies was addressed only to "[a] factual dispute concerning the applicability of a particular guideline," *id.*, an issue which does not raise the possibility of the deprivation of a constitutional right. Here to the contrary, Easter alleges that the government withheld a section 5K1.1 motion for a constitutionally impermissible reason, the exercise of his right to a jury trial. As stated in both the majority opinion and in *Saucedo*, we apply the plain error rule less rigidly when reviewing a potential constitutional error. *See* 950 F.2d at 1511.

Instead of being controlled by *Saucedo*, therefore, I believe the instant case falls under our holding in *United States v. Cheama*, 783 F.2d 165 (10th Cir.1986), in which we addressed a fact-dependent constitutional challenge raised for the first time on appeal. Rather than refuse review of a serious constitutional deprivation for lack of an adequate record, we remanded for further development of the facts.

Similarly, I would remand for a limited hearing on Easter's claim that the government's refusal to make a section 5K1.1 reduction was in retaliation for his decision to seek a jury trial. From the facts recited in the majority opinion, it appears that Easter cooperated in much the same way as Alexander, played a role in leading authorities to Piggee, the drug source, and was no more culpable than either Alexander or Kirksey. These facts are enough in my view to raise an inference that the government's failure to move to reduce Easter's sentence based on his cooperation was in retaliation for Easter's decision to go to trial. In addition, the other participants, all of whom pled, allegedly received

---

**8.** Defendant relies on vague statistics cited in a recent Minnesota Supreme Court case that, in 1988, 96.6% of those arrested in Minnesota for possession of cocaine base were black, and 79.6% of those arrested for possession of cocaine powder were white. *See State v. Russell*, 477 N.W.2d 886, 888 n. 1 (Minn.1991).

sentences ranging from six months to five years. Easter, who was nineteen and had no prior criminal history, went to trial and received a sentence of almost twenty years. Under *Cheama,* I believe these circumstances warrant a remand on this issue.

I am troubled by the majority's refusal to address the merits of only one of three issues raised for the first time on appeal, despite conceding that the claim raises a valid constitutional issue. In contrast, the majority elects to consider the two other claims raised for the first time on appeal and rejects them on the merits. Because the majority's decision to pick and choose among these claims is not supported by the authority upon which it relies, and because other authority supports hearing this claim, I must respectfully dissent.