25 F.3d 1057
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 JACKSON SHOPPING VILLAGE, a California general partnership,
Plaintiff-Appellant,
v.
Lyn ACKERMAN, Kenny Hartman, Debby Hartman, Defendants-Appellees, and
Larry BERLIN, individually; Mitch Blake, individually;
Dennis Smith, individually, Defendants,
Berlin ARCHITECTS, a sole proprietorship, Defendant-Third
Party-Plaintiff
v.
KEY BANK OF UTAH, a Utah corporation, Third-Party-Defendant.
 No. 93-8098.
 United States Court of Appeals, Tenth Circuit.
 May 2, 1994.
 
 1
 Before BALDOCK and McKAY, Circuit Judges, and BROWN,** District Judge.
 
 ORDER AND JUDGMENT[1]
 
 2
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 3
 Plaintiff Jackson Shopping Village (JSV) appeals from a district court order granting summary judgment for various defendants in this diversity tort action. More specifically, JSV's appeal is limited to "that portion of [the district court's order] ... which grants the Defendants, Lynn [sic] Ackerman, Kenny Hartman, and Debby Hartman Summary Judgment on the Plaintiff's fraud count and no other portion of the order."[2] App. Vol. I, doc. 27 (notice of appeal).
 
 
 4
 Defendants-appellees are employees/officers of Ackerman Construction Co., Inc. (ACC), the general contractor on a JSV project in Jackson, Wyoming. Some time after construction on the project was underway, ACC filed for bankruptcy protection, leaving JSV to complete the project directly with the subcontractors. JSV then commenced this suit to recover over $500,000 in overcharges it claims defendants-appellees had made to cover losses incurred by ACC on other projects that, unlike JSV's, were bonded and personally guaranteed.
 
 
 5
 Under Wyoming law, an actionable claim of fraud requires "a false or fraudulent statement or misrepresentation or concealment of a material fact, made by the defendant to induce action or inaction, which was reasonably and justifiably believed to be true by the plaintiff, and relied upon by the plaintiff to his damage." Davis v. Consolidated Oil & Gas, Inc., 802 P.2d 840, 850 (Wyo.1990). Applying this test, the district court held JSV's fraud claim deficient as a matter of law, because "[JSV] provides only conclusive allegations to support [its] claim. [JSV] is unable to establish any evidence that defendants made any false statement or misrepresentation of material fact with the intent to induce action or inaction on [JSV's] part." App. Vol. I, doc. 26 at 543-44. We review the district court's determination de novo, see Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir.1990), and affirm for the reasons expressed below.
 
 
 6
 At the core of this dispute are certain interrelated provisions of the parties' contract, which specify the scope, and thus total price, of the project, and govern the calculation of interim progress payments to ACC based on that price. JSV's primary contention of fraud is that ACC inflated its pro rata draw requests by basing them on a total contract price of $3.6 million when, in fact, the contract authorized only $2.9 million of construction. Defendants-appellees admit the draw requests were based on the former figure, but contend it reflects the proper interpretation of pertinent contractual provisions. The following articles of the contract clearly support their view:
 
 ARTICLE 4
 CONTRACT SUM
 
 7
 The Owner shall pay the Contractor in current funds for the performance of the Work ... the Contract Sum of $3,600,000.00. Broken down as follows:
 
 
 8
 NOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLE
 
 TABLE
 NOTE:
 
 9
 These breakdowns are used herein as an approximation of the separate cost of the items so specified. However, this contract is a lump sum contract and in no event shall the contract price exceed $3,600,000.00 irrespective of the fact that any one of the items specified in A-F exceed the amount shown above.
 
 ARTICLE 5
 PROGRESS PAYMENTS
 
 10
 Based upon Applications for Payment submitted to the Architect and to the Owner by the Contractor and Certificates for Payment issued by the Architect and Owner, and upon approval by the construction lender's reviewing Architect, the Owner shall make progress payments on account of the Contract Sum to the Contractor as provided in the Contract Documents for the period ending the twenty-fifth (25th) day of the month....
 
 
 11
 App. Vol. III, doc. 1 at 12 (emphasis added).
 
 
 12
 To counter the plain effect of the quoted provisions, JSV relies heavily on a later section of the contract in which it reserved the authority to determine when, and ultimately whether, certain components of the project (i.e., buildings B and C) would be built. In JSV's view, this section qualifies the initial specification of the contract sum for purposes of progress-payment computation. That is, unless and until JSV directed ACC in writing to commence construction of buildings B and C, their price ($689,137) was not to be counted as part of the contract sum. Since JSV never issued such a direction, it contends the contract sum was only $2.9 million. The section in question provides:
 
 ARTICLE 7
 MISCELLANEOUS PROVISIONS
 
 13
 [A. Provisions relating to the K-Mart building.]
 
 
 14
 B. Jackson Village Shopping Center (Buildings B, C & D)
 
 
 15
 ....
 
 
 16
 2.(a) Contractor will not commence construction of the Building's [sic] B and C until so notified in writing to do so by Owner. It being the intention of Owner and Contractor to construct Buildings A and D first.
 
 
 17
 (b) If Owner fails to notify Contractor to start construction of Buildings B and C on or before January 1, 1991, then the outside completion date and penalty charged for failure to complete Buildings B and C within said date shall be moved forward....
 
 
 18
 (c) Owner may at any time in it's [sic] sole option notify Contractor in writing that Buildings B and C will not be a part of this contract. In such event, the cost of this contract will be reduced by [$689,137].
 
 
 19
 Id. at 9.
 
 
 20
 Defendants-appellees maintain this section had no material impact on the contract sum because JSV did not exercise its option to exclude buildings B and C from the contract until ACC filed for bankruptcy--after all of the disputed draw requests had been made. In their view, while JSV's failure to give the go-ahead under section 2(a),(b) could delay construction on buildings B and C, only JSV's express direction not to construct the buildings at all, pursuant to section 2(c), could eliminate them from the contract and thereby reduce the specified contract sum.
 
 
 21
 Significantly, in a portion of its judgment from which no appeal was taken, see supra note 1 and accompanying text, the district court specifically addressed and rejected JSV's interpretation of the contract in favor of the defendants-appellees' construction:
 
 
 22
 Defendant Ackerman contends that the terms of the contract are clear in that the sum of the contract is $3,600,000 [pursuant to article 4 quoted above].... [JSV] argues that other language in the contract changes the contract sum to $2,910,863. The language to which [JSV] refers prohibits the contractor from commencing the construction of buildings B and C until the owner notifies the contractor in writing and allows the owner to notify the contractor that buildings B and C will not be a part of the contract, such notification reducing the cost of the contract to $2,910,863.
 
 
 23
 The Court holds that in this case the evidence presented is such that reasonable minds could not differ. The defendant's interpretation is correct as a matter of law.... Before notification that buildings B and C should not be built, the contract price was $3,600,000. All draw requests at issue in this case were completed before [JSV] gave any such written notification to [ACC] and thus [ACC's] use of the original contract price in calculating draw requests was not negligent and did not breach the contract.
 
 
 24
 App. Vol. I, doc. 26 at 539-40. It is thus the law of the case that defendants-appellees were proceeding from a correct interpretation of the parties' contract. Their draw requests cannot be held fraudulent for adhering to that very interpretation. Indeed, even if the contract were construed, instead, in JSV's favor, we would still agree with the district court that JSV has no case for fraud on this basis. "[A] party to a contract pursuing a course of action predicated upon his own reasonable construction of the contract does not thereby subject himself to liability for fraud." United States v. Hangar One, Inc., 406 F.Supp. 60, 63 (N.D.Ala.1975), rev'd on other grounds, 563 F.2d 1155 (5th Cir.1977); see Duffy v. Brown, 708 P.2d 433, 438 (Wyo.1985)(summary judgment properly granted for defendant on fraud claim where "dispute was over interpretation of the [parties'] contract, nothing more").
 
 
 25
 On appeal, JSV urges a second, factual basis for its fraud claim, i.e., that ACC allegedly requested and obtained draws payable to itself for work done, if at all, solely by its subcontractors. See Brief of the Appellant at 4, 10. The only specific example given concerns payment for electrical work that, according to JSV, was completely subcontracted out by ACC. Id. We reject this alternative argument for a number of reasons.
 
 
 26
 First of all, it could be deemed waived, as it was never adequately presented to the district court. See United States v. Lee, 989 F.2d 377, 380 (10th Cir.1993); FDIC v. Kansas Bankers Sur. Co., 963 F.2d 289, 292-93 (10th Cir.1992). JSV's pleadings, pretrial memorandum, and memoranda in opposition to summary judgment all rely on its broad contract-sum argument and do not identify particular draw requests fraudulent in any other respect. See App. Vol. I, doc. 24; Vol. II, docs. 17, 19; Vol. III, doc. 1. Moreover, the only reference to the matter in our record of the summary judgment hearing consists of counsel's statement that "there's one aspect of this thing we really haven't touched on, ... that [ACC] submitted some pay requests that were just totally fraudulent, large amounts of money for plumbing work when [ACC] didn't do any." App. Vol. I, doc. 25 at 474. This conclusory accusation of fraudulent plumbing draws, unsupported by any particularized reference to the record, was clearly inadequate in form and focus to apprise the district court of the allegedly fraudulent electrical draws JSV now objects to.[3]
 
 
 27
 Secondly, the evidence relied on by JSV for its factual premise that the electrical work was not done by ACC consists of a Rule 2004 exam in ACC's bankruptcy case. However, no transcript of this exam was submitted in connection with the summary judgment proceedings in district court--or, for that matter, in connection with this appeal. We do not consider alleged errors based on materials never actually before the district court, Pelican Prod. Corp. v. Marino, 893 F.2d 1143, 1148 (10th Cir.1990), nor do we address fact-dependent challenges without an adequate evidentiary record on appeal, United States v. Easter, 981 F.2d 1549, 1556 n. 5 (10th Cir.1992), cert. denied, 113 S.Ct. 2448 (1993).
 
 
 28
 Finally, as defendants-appellees point out, JSV's position simply boils down to the fact that it paid directly to the general contractor a portion of the funds attributed to subcontracted work, and there is nothing inherently fraudulent about such an arrangement. JSV does not cite to us any evidence indicating that the work involved was not actually done, or that the funds in question were improperly disbursed. Moreover, ACC did not handle the billing arrangement in a deceptive manner; JSV was told the nature of the work billed and the designated recipients of the requested funds. "[F]raud will not be imputed to any party when the facts and circumstances out of which it is alleged to arise are consistent with honesty and purity of intention." Duffy, 708 P.2d at 437. Because JSV has not pointed to any "clear, unequivocal and convincing evidence" of fraud in the record, id., we must conclude summary judgment was appropriate, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 255-56 (1986)(summary judgment inquiry incorporates underlying evidentiary standard of proof).
 
 
 29
 The judgment of the United States District Court for the District of Wyoming is AFFIRMED. Defendants-appellees' requests for appellate sanctions are denied.
 
 
 
 **
 Honorable Wesley E. Brown, Senior District Judge, United States District Court for the District of Kansas, sitting by designation
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 JSV's attempt to reintroduce negligence issues into this appeal through its appellate brief is ineffective. See Cunico v. Pueblo Sch. Dist. No. 60, 917 F.2d 431, 444 (10th Cir.1990)("Our appellate review is limited to final judgments or parts thereof that are designated in the notice of appeal [pursuant to Fed.R.App.P. 3(c) ] ... and our jurisdiction does not extend to other matters of the judgment that [appellant] may [subsequently] wish to appeal.")
 
 
 [3]
 On appeal, JSV cites excerpted deposition testimony of one of its own partners for the conclusion that "there is absolutely no logical explanation for a check to 'Ackerman [for] Electrical.' " Brief of the Appellant at 10 (citing App. Vol. II, doc. 20 at "344-36 et. seq."). As it happens, this witness testified on the basis of a recap sheet of ACC draw requests that he ultimately admitted he did not prepare and could not comment on. App. Vol. II, doc. 20 at 344-43. In any event, the point here is that while this deposition testimony "may have been before the district court in a generic sense, it was never [specifically] relied upon by Plaintiff, ... as it is now," and, consequently, does not affect our review of the district court's ruling on summary judgment. Phillips v. Calhoun, 956 F.2d 949, 952-53 (10th Cir.1992)