MICHAEL, Circuit Judge,
concurring in part and concurring in the judgment in part:
I concur in parts II.A, III, and IV of the majority’s opinion. My main disagreement is with Judge Niemeyer’s separate reasoning and conclusion that James Sweets’s police-compelled disclosure of John Long’s location does not implicate Sweets’s Fifth Amendment rights. Nevertheless, I concur in part II’s judgment affirming the district court’s denial of Sweets’s motion to suppress because the exclusionary rule would not bar Long’s testimony, and Sweets waived his objection to the admission of the physical evidence seized in Long’s hotel room.
I.
“To qualify for the Fifth Amendment privilege, a communication must be testimonial, incriminating, and compelled.” Hiibel v. Sixth Judicial Dist. Court, 542 U.S. 177, 189, 124 S.Ct. 2451, 159 L.Ed.2d 292 (2004). The majority assumes, as do I, that Sweets’s act of producing Long was compelled. For the reasons mentioned below, I conclude that this act was also testimonial and incriminating, thus triggering the protections of the Fifth Amendment.
*132 Sweets’s act of producing Long was testimonial because it “relate[d] a factual assertion” and “disclose[d] information” to the police. Doe v. United States, 487 U.S. 201, 210, 108 S.Ct. 2341, 101 L.Ed.2d 184 (1988); see also United States v. Hubbell, 530 U.S. 27, 36 n. 19, 120 S.Ct. 2037, 147 L.Ed.2d 24 (2000) (stating that “the Fifth Amendment privilege against self-incrimination applies to acts that imply assertions of fact”). Specifically, in taking the police to Long’s hotel room, Sweets revealed that he knew Long and that he knew where Long was hiding. Cf. United States v. Doe, 465 U.S. 605, 613, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984) (stating that by producing documents in compliance with a subpoena, the witness would admit that the papers existed, were in his possession or control, and were authentic). During the trip to the hotel, Sweets also admitted that he knew Long had used a different name to rent the room.
Sweets’s production of Long was also incriminating. A communication is incriminating for purposes of the Fifth Amendment if it “could be used in a criminal prosecution or could lead to other evidence that might be so used.” Hiibel, 542 U.S. at 190, 124 S.Ct. 2451 (quoting Kastigar v. United States, 406 U.S. 441, 445, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972)). Sweets’s disclosure of Long’s hotel room was incriminating because it led to the following information that was admitted against him at trial: (1) the location of a member of a drug trafficking conspiracy of which Sweets was a member, (2) physical evidence of that conspiracy, including drugs, drug money, and drug paraphernalia, and (3) the location of a place where Sweets had previously purchased large quantities of drugs.
Judge Niemeyer’s conclusion that Sweets’s production of Long did not implicate the Fifth Amendment is based on the mistaken belief that only facially incriminating statements are protected. See ante at 128 (“The fact that Sweets knew Long, a drug conspirator and a murder suspect,” and knew Long’s location, “does not suggest that Sweets himself was a drug conspirator or a murder suspect.”). The protections of the Fifth Amendment are much broader than Judge Niemeyer suggests. “It has ... long been settled that [the Fifth Amendment’s] protection encompasses compelled statements that lead to the discovery of incriminating evidence even though the statements themselves are not incriminating and are not introduced into evidence.” Hubbell, 530 U.S. at 37, 120 S.Ct. 2037; accord Kastigar, 406 U.S. at 445, 92 S.Ct. 1653 (holding that the Amendment “protects against any disclosures that could be used in a criminal prosecution or could lead to other evidence that might be so used”); Hoffman v. United States, 341 U.S. 479, 486, 71 S.Ct. 814, 95 L.Ed. 1118 (1951) (stating that the privilege extends to statements “which would furnish a link in the chain of evidence needed to prosecute” the declarant); Hiibel, 542 U.S. at 190, 124 S.Ct. 2451 (same); Doe, 487 U.S. at 211 n. 10, 108 S.Ct. 2341 (stating that the Fifth Amendment protects compelled disclosure of facts “that might serve as or lead to incriminating evidence”). Although Sweets’s communication itself was not inculpatory, it led to evidence that directly implicated him in a drug trafficking conspiracy.
Judge Niemeyer’s statement that Sweets’s communication to the police was not “substantially incriminat[ing],” ante at 128, is also problematic because it suggests that a compelled statement is not protected by the Fifth Amendment unless it is substantially incriminating. This interpretation is inconsistent with Supreme Court precedent. In Doe and Marchetti, the cases cited by Judge Niemeyer, the Supreme Court stated that a witness can *133 not assert his Fifth Amendment rights unless the risk of incrimination is substantial and real. Doe, 465 U.S. at 614 n. 13, 104 S.Ct. 1237 (stating that producing subpoenaed records presented a substantial “risk of incrimination”); Marchetti, 390 U.S. at 54, 88 S.Ct. 697 (holding that business owner could assert Fifth Amendment in refusing to register business as engaged in accepting wagers because registration requirement posed a real risk of future prosecution). In other words, the likelihood, not the degree, of incrimination must be substantial to trigger the Fifth Amendment protections. There is no support for Judge Niemeyer’s assertion that a compelled incriminating statement is not protected unless it substantially incriminates the speaker.
In sum, the May 2004 interrogation of Sweets implicated the Fifth Amendment’s protections. The police compelled Sweets to disclose factual information (Long’s location) by threatening to detain his girlfriend and her nephew until Sweets cooperated. Sweets’s testimonial communication was incriminating because it led to evidence that directly implicated him in a drug trafficking conspiracy.
II.
The Fifth Amendment prohibits Sweets’s coerced testimonial communication and its fruits from being admitted against him at trial.* In United States v. Patane the Supreme Court reaffirmed “that those subjected to coercive police interrogations have an automatic protection from the use of their involuntary statements (or evidence derived from their statements) in any subsequent criminal trial.” 542 U.S. 630, 640, 124 S.Ct. 2620, 159 L.Ed.2d 667 (2004) (emphasis in original) (quoting Chavez v. Martinez, 538 U.S. 760, 769, 123 S.Ct. 1994, 155 L.Ed.2d 984 (2003)). Because we assume that Sweets’s communication was coerced, we must apply the traditional fruit of the poisonous tree analysis to determine whether evidence derived from that communication (Long’s testimony and the contraband seized at the hotel) should have been excluded at trial.
I ultimately agree with the majority that Long’s testimony was properly admitted *134 because it was sufficiently attenuated from Sweets’s coerced communication. The Supreme Court has recognized that improper police conduct that leads to the discovery of a witness “very often will not play any meaningful part in the witness’ willingness to testify.” United States v. Ceccolini, 435 U.S. 268, 277, 98 S.Ct. 1054, 55 L.Ed.2d 268 (1978). Accordingly, in determining whether live-witness testimony is sufficiently attenuated from the initial coercive police interrogation, we look primarily to the “degree of free will” exercised by the witness in deciding whether to testify against the defendant. Id. at 276, 98 S.Ct. 1054. The free will inquiry is supplemented by the examination of the following additional factors: (1) whether the coerced communication was used in questioning the testifying witness; (2) the time between the coercive interrogation and the initial contact with the witness; (3) whether the investigators had prior knowledge of the relationship between the witness and the defendant; and (4) whether the police conducted the coercive interrogation with the purpose of implicating the defendant. See United States v. McKinnon, 92 F.3d 244, 247-48 (4th Cir.1996) (citing Ceccolini, 435 U.S. at 279-80, 98 S.Ct. 1054).
After considering these factors, I believe that Long’s testimony was sufficiently attenuated from Sweets’s compelled communication. First, the facts disclosed by Sweets were not used in questioning Long. Second, although the police located and arrested Long shortly after Sweets was interrogated, Long’s decision to testify against Sweets occurred over a year later. Third, the police had prior knowledge of Long and his relationship with Sweets. Fourth, the police did not commit the coercive interrogation of Sweets with the intent to discover incriminating evidence against him. In sum, there is no reason to believe that Long’s decision to testify against Sweets was not the product of his own free will. His testimony was therefore sufficiently attenuated from Sweets’s compelled communication and was properly admitted at trial.
The contraband seized from Long’s hotel room was also derived from Sweets’s production of Long. Sweets did not object to the admission of this evidence at trial, but he makes a perfunctory challenge to its admission on appeal. See Appellant’s Br. at 16 (claiming generally that “[e]vidence derived from James Sweets’ May 2004 compelled statements should not have been used against Sweets at trial”). Although we have the discretion to correct plain errors not raised at trial, see Fed.R.Crim.P. 52(b), plain error review is not appropriate in this instance. See United States v. Young, 470 U.S. 1, 15, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985) (stating that “the plain-error exception to the contemporaneous-objection rule is to be ‘used sparingly’ ”). Because Sweets did not object to the physical evidence at trial, the government did not have the opportunity to advocate its admissibility under one of the exceptions to the exclusionary rule, such as the inevitable discovery doctrine. See Nix v. Williams, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984). We are thus unable to determine whether admission of the evidence was plain error because the relevant facts were not developed in the district court. See United States v. Easter, 981 F.2d 1549, 1556 (10th Cir.1992) (refusing to review for plain error because the defendant failed to raise a “fact-dependent issue in the court below”).
For these reasons, I agree with the majority’s decision to affirm the district court’s order denying Sweets’s motion to suppress.

 Judge Niemeyer also concludes that Sweets's Fifth Amendment right was not violated because "[e]ven though physical evidence and the testimony of a co-conspirator were introduced against him at trial, his own statements never were.” Ante at 130. The question on appeal is not whether Long's testimony violated Sweets's Fifth Amendment right, but whether it was barred by the exclusionary rule. The exclusionary rule bars the admission, for most purposes, of evidence acquired in violation of the Fifth Amendment’s prophylactic rules. These prophylactic rules, which safeguard a defendant's privilege against self-incrimination, "necessarily sweep beyond the actual protections of the Self-Incrimination Clause.” United States v. Patane, 542 U.S. 630, 639, 124 S.Ct. 2620, 159 L.Ed.2d 667 (2004). The Miranda prophylactic (and constitutional) rule, for example, creates a presumption that unwarned statements made during custodial interrogation are compelled. Oregon v. Elstad, 470 U.S. 298, 307, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985); see also Dickerson v. United States, 530 U.S. 428, 444, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000) (stating that Miranda is a constitutional rule). "Consequently, unwarned statements that are otherwise voluntary within the meaning of the Fifth Amendment must nevertheless be excluded from evidence,” thereby providing "a remedy even to the defendant who has suffered no identifiable constitutional harm.” Elstad, 470 U.S. at 307, 105 S.Ct. 1285. Thus, it is well-established that the exclusionary rule "may be triggered even in the absence of a Fifth Amendment violation.” Id. at 306, 105 S.Ct. 1285. Judge Niemeyer’s conclusion that Sweets’s Fifth Amendment right was not violated ignores the prophylactic rule that requires the exclusion of evidence derived from compelled statements. See Patane, 542 U.S. at 640, 124 S.Ct. 2620.